# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cr-00288-01-BP |
| | ) | |
| MARVIN T. GLOVER, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMO

Comes now the defendant, Marvin Glover, by and through counsel, Carie Allen, Assistant Federal Public Defender, and respectfully moves this Court to consider a non-guideline sentence in this case based on the sentencing criteria established at 18 U.S.C. § 3553.

## OBJECTIONS

### Felony murder is not a crime of violence

Missouri second degree murder, felony murder, §565.021.1(2), is not a "crime of violence" under the Guidelines. Section 4B1.1(a) states that a "crime of violence . . . is murder." §4B1.2(a)(2).

The Eighth Circuit has held that just because murder "appears on the list" in §4B1.2(a)(2), this Court should not "think this an easy case" because Mr. Glover was

found guilty of murder, "and the Guidelines categorize the offense as a crime of violence." *United States v. Schneider*, 905 F.3d 1088, 1092–93 (8th Cir. 2018). In *Schneider*, the Eighth Circuit concluded that North Dakota aggravated assault was not a "crime of violence" under the enumerated offense clause of the Guidelines, even though "aggravated assault" is enumerated in §4B1.2(a)(2).

In reaching that result, the Eighth Circuit set forth familiar principles of the categorical analysis:

> The Supreme Court has long held that the enumerated-offenses clause of the Armed Career Criminal Act does not refer to whatever conduct a state happens to call "burglary," "aggravated assault," or any of the other listed offenses. Rather, it incorporates the generic, contemporary meaning of those offenses, a "uniform definition independent of the labels employed by the various States' criminal codes." We have extended the Supreme Court's interpretation of the Armed Career Criminal Act to the Guidelines. The issue, then, is whether the crime Schneider committed counts as "generic" aggravated assault.
>
> ***
>
> We focus on the elements of the crime, not the defendant's underlying conduct and compare the elements of the crime with those of the generic enumerated offense. The ultimate question is whether the elements of the crime are the same as, or narrower than, those of the generic offense. If they are, then the crime falls within the enumerated-offenses clause. If it does not fit the generic enumerated offense, then defendant's conviction cannot satisfy the enumerated-offenses clause.
>
> To determine whether a crime falls within the enumerated-offenses clause, we begin by identifying the elements of the generic enumerated offense. Otherwise, there would be no basis for a comparison. The elements of the generic offense, the Supreme Court has told us, come from the generic, contemporary definition of the enumerated crime. Here, however, the enumerated-offenses clause and its accompanying commentary do not

> define most of the generic offenses and, in particular, they say nothing
> about the elements of aggravated assault. *See* U.S.S.G. § 4B1.2. We have to
> look elsewhere.
>
> The Supreme Court has explained that how the criminal codes of most
> States define an offense provides strong evidence of its generic meaning.
> For that reason, the relevant Model Penal Code provision, if widely
> adopted, can reflect the elements of the generic offense.

*Schneider*, 905 F.3d at 1092-3; *see also United States v. Steward*, 880 F.3d 983, 986-7 (8th Cir. 2018) (relying on Model Penal Code to determine that Oklahoma voluntary manslaughter was a "crime of violence"); *United States v. Kosmes*, 792 F.3d 973, 977 (8th Cir. 2015) (relying on Model Penal Code to determine that Guam involuntary manslaughter qualified under § 2L1.2(b)(1)).

### **Defining "murder" under § 4B1.2.**

Numerous circuits employ a similar definition of generic murder. "After surveying the Model Penal Code, dictionary definitions, and state laws, the Third Circuit defined generic murder as 'causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life.'" *United States v. Vederoff*, 914 F.3d 1238, 1246–47 (9th Cir. 2019); quoting *United States v. Marrero*, 743 F.3d 389, 401 (3d Cir. 2014), abrogated on other grounds; citing *also United States v. Castro-Gomez*, 792 F.3d 1216, 1217 (10th Cir. 2015) (citing approvingly to *Marrero* ); *see also United States v. Baez-Martinez*, 950 F.3d 119, 126 (1st Cir. 2020)

3

(relying on Model Penal Code to determine Puerto Rico murder in the second degree is a violent felony under the ACCA).

### **Missouri second degree murder, felony murder, §565.021.1(2), is broader than the generic definition of murder.**

At the time of Mr. Glover's conviction of Missouri second degree murder, felony murder, the crime was defined as follows:

> 1. A person commits the crime of murder in the second degree if he:
> (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; or
> (2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

Mo. Ann. Stat. § 565.021

The PSR notes that Mr. Glover's convictions under the statute were under subsection (2), the felony degree murder section. Determining whether felony murder in the second degree in Missouri is generic murder is straightforward because Missouri courts have expressly said it is not:

> It is true that many jurisdictions have enacted legislation that limits the application of the felony murder rule to cases where the underlying felony is either a "dangerous" felony or one that is *malum per se*. *See* WAYNE R. LaFave & AUSTIN W. SCOTT, CRIMINAL LAW § 71 (1972). However, as we illustrated above, section 565.021.1(2) states that a person is guilty of second-degree felony murder if he commits *any* felony and in the perpetration of that felony, another person is killed. (Emphasis added).

4

> Thus, under Missouri's felony murder statutory scheme, any underlying felony supplies the requisite *mens rea* for second-degree felony murder. *State v. Mannon,* 637 S.W.2d 674, 677 (Mo. banc 1982); *State v. Davis*, 797 S.W.2d 560, 563 (Mo.App.1990).

*State v. Pembleton*, 978 S.W.2d 352, 356 (Mo. Ct. App. 1998).

Scholars, too, have acknowledged that §565.021.1(2) is not generic murder:

> As legislatures adopted lesser punishments for felonies other than murder, as well as designated additional crimes as felonies, questions have arisen regarding which felonies can and should serve as a predicate for felony murder. *Under modern statutes, in a few jurisdictions any felony at all can serve as a basis for felony murder.* [**citing to §565.021.1(2)**]. Most states, however, have adopted one or more doctrines that limit which felonies can give rise to felony murder liability.

Dora W. Klein, *Is Felony Murder the New Depraved Heart Murder? Considering the Appropriate Punishment for Drunken Drivers Who Kill*, 67 S.C. L. Rev. 1, 14 (2015), emphasis added.

The plain text of §565.021.1(2) could not be any broader, stating unambiguously that the underlying felony may be "any felony." *Id*. Missouri courts have repeatedly relied on the text's breadth to affirm felony murder convictions in a wide array of contexts. "The statute as written indicates that the legislature intended *every* felony to qualify as a predicate to felony-murder." *State v. Jones*, 596 S.W.3d 168, 177 (Mo. Ct. App. 2020) (emphasis added). "[I]t is not within this court's province to rule contrary to our legislature's intent." *Id.* The *Jones* court explained:

> It is widely-recognized that the plain and ordinary meaning of the phrase "any felony" in Section 565.021.1(2) is expansive and indicates the

5

> legislature's intent that *every* felony can serve as an underlying felony for purposes of felony-murder. *See Bouser*, 17 S.W.3d at 138-39; *State v. Harding*, 528 S.W.3d 362, 368-69 (Mo. App. E.D. 2017); *State v. Tuttle*, 519 S.W.3d 443, 447-49 (Mo. App. S.D. 2016). If the legislature had wanted to exclude from the otherwise all-encompassing "any felony" language in Section 565.021.1(2) specific felonies or types of felonies—as it had done in prior iterations of the felony-murder rule in earlier versions of the statutes—it certainly could have used less expansive language than "any felony."

*Id*. at 175.

Indeed, Missouri courts have affirmed convictions under §565.021.1(2) for peculiar and non-generic felony murder crimes, with "the underlying charge being possession of a controlled substance with intent to deliver." *State v. Moore*, 930 S.W.2d 464, 466 (Mo. Ct. App. 1996). This is just further evidence of why §565.021.1(2) is non-generic, and not a "crime of violence."

*Vederoff* reached a similar result, concluding that Washington State second-degree murder was broader than generic murder. The Honorable Fernando J. Gaitan, Jr, sitting by designation for the Ninth Circuit, concluded that "[u]nder Washington law, the underlying felony can be *any felony*—unlike felony murder in the Third Circuit's definition of generic murder, it is not limited to dangerous felonies." *Vederoff*, 914 F.3d at 1247 (emphasis added). Just like in *Vederoff*,

> §565.021.1(2) is overbroad and not generic murder because it penalizes "any felony", by using that phrase in the statute, and by how Missouri courts have interpreted that phrase in reported case law. Thus, §565.021.1(2) does not satisfy the

6

enumerated offense clause of §4B1.2(a)(2).

### Section 565.021.1(2) does not satisfy the force clause, either.

Intentional force directed at the victim is not required to commit felony murder under §565.021.1(2), so it does not satisfy the force clause of §4B1.2(a)(1), either. The Supreme Court held that the force clause of the Armed Career Criminal Act (which should be analyzed identically as §4B1.2(a)(1)) precludes offenses from satisfying the force clause when they require "only a *mens rea* of recklessness — a less culpable mental state than purpose or knowledge." *Borden v. United States*, 141 S.Ct. 1817 (2021). In applying this test, the only relevant inquiry is whether the offense "necessarily involves the defendant's use . . . of physical force", so "[i]f any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard." *Id*. at 1825.

*Borden* confirms that use of force against another requires purposeful or knowing conduct. It explained that the phrase "use of physical force" in the ACCA indicates a "'volitional' or 'active' employment of force." *Id.* at 1825, quoting *Voisine v. United States*, 136 S. Ct. 2272, 2279-81 (2016). And because it modifies "use of force" in that volitional sense, the "against another" phrase "demands that the perpetrator direct his action at, or target, another individual." *Id*. Thus, the force clause requires a conscious decision and therefore "covers purposeful and knowing acts, but excludes reckless

conduct." *Id.*

As already highlighted above, one may be guilty of §565.021.1(2) without committing a forceful act that is knowing and purposeful. The Eighth Circuit has already held this is so even before *Borden* because "[a] statute that criminalizes reckless driving cannot satisfy the force clause." *Schneider*, 905 F.3d at 1092. Missouri caselaw has numerous examples where a defendant has been convicted of §565.021.1(2), with driving while intoxicated being the underlying felony. *See, for example, State v. Mayfield*, 83 S.W.3d 103, 104 (Mo. Ct. App. 2002); *State v. Mayer*, 3 S.W.3d 423, 424–25 (Mo. Ct. App. 1999). And as already explained in *Moore,* the underlying crime was a drug crime, and therefore required no force whatsoever. *Moore*, 930 S.W.2d at 466.

Because §565.021.1(2) does not satisfy the force clause either, it is not a "crime of violence."

**At least one federal district court has concluded that §565.021.1(2) is not a "crime of violence" under the Guidelines.**

A federal district court in Kansas concluded that §565.021.1(2) is not a "crime of violence." *See United States v. Watts*, No. 14-CR-20118-002, 2017 WL 411341, at *3-*11 (D. Kan. Jan. 31, 2017). In reaching that conclusion, the Court first analyzed why it did not satisfy the force clause:

> The statute does not limit felony murder to a designated felony or a class of felonies. Instead, Missouri courts use a "foreseeability-proximate cause" concept of homicide responsibility in determining whether the risk of death was foreseeable from the commission of the underlying felony, in

8

felony murder cases.

In *State v. Burrell*, the Missouri Supreme Court stated that "a defendant is responsible for any deaths that are the natural and proximate result of the commission of the felony." . . . The identity of the actual killer is irrelevant. Further, in *State v. Baker*, the Missouri Supreme Court explained the expansiveness of the statute: "it is of no concern that the fatal shot was fired by a person acting to thwart ... the underlying felony ... [and] the identity of the deceased is not a factor affecting the criminal responsibility of a defendant under a felony murder charge."

Given the expansive nature of the underlying felonies used to pursue a conviction for felony murder, the Court finds that "physical force" is not an element of second-degree felony murder in Missouri. For example, in *State v. Burrell*, the defendant was charged with first-degree child endangerment to support a conviction for second-degree felony murder. It was the action of the victim's father in beating the child that led to the victim's death. The Missouri Supreme Court upheld the conviction for second-degree felony murder against the defendant mother because defendant placed the victim in contact with the father, allowed the father to remain with her and the victim after witnessing the beating, and did not seek medical attention for the victim.

***

Further, even if the Court were to find that second-degree murder has as an element physical force  . . . , the second-degree murder statute does not meet the mens rea requirement for § 4B1.2. . . . The felony murder rule is a rule of strict liability under Missouri law. Therefore, "no mental state on the part of the defendant need be shown other than to commit or participate in the underlying felony." The underlying felony may be "any felony," so Missouri has obtained second-degree murder convictions for predicate felonies that do not have a mens rea requirement of purposeful or intentional behavior. Thus, because this statute may be satisfied by a mens rea of recklessness or negligence, Defendant's underlying second-degree felony murder conviction under Mo. Rev. Stat. § 565.021 does not have the requisite purposeful or intentional behavior for application of § 4B1.2.

*Id*. at *8-*9 (footnotes and supporting citations therein omitted).

Furthermore, the district court of Kansas also concluded that §565.021.1(2) is not "murder" under the enumerated offense clause of §4B1.2(a)(2) because it was "broader" than generic murder. *Id*. at *10. "While generic murder is only applicable during the "commission of a felony," Missouri second-degree felony murder includes killings "in the perpetration or the attempted perpetration of such felony *or in the flight from the perpetration or attempted perpetration of such felony*." *Id*. quoting § 565.021(2) (emphasis original). "Further, the Missouri statute includes both actual commissions of a felony and attempts at commissions of a felony, which is broader than simply 'commission of a felony.'" *Id*.

For all of these reasons, Mr. Glover's convictions under § 565.021(2) are not a "crime of violence."

**<u>Mr. Glover did not maintain a premises for the purpose of manufacturing or distributing a controlled substance</u>**

An enhancement under §2D1.1(b)(12) does not apply to Mr. Glover as he did not maintain or reside in the home at 3345 Kensington. Application note 17 specifically says that the court should consider "(A) whether the defendant held a possessory interest (*e.g.* owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises."

Mr. Glover does not dispute that drugs were sold at the Kensington address, nor

10

that he was one of three people present at the time that the search warrant was executed. However, there is no evidence that he maintained the property in anyway. In fact evidence supports that he resided at 9307 Lewis.

Although it is not explicitly stated in the PSR, Robert Pierceson[1] was seen frequently at the Kensington address and was seen at using a key to enter the home on at least one occasion. The same cannot be said of Mr. Glover.

FPD investigator, Ashley Plowden, contacted the owner of the Kensington home, Vernon Carrell, who reported that Mr. Glover was not a resident of the Kensington home and said he would provide the lease, although he would not explicitly say who leased the home. Since that conversation, Mr. Carrell has appeared to intentionally avoid contact with Ms. Plowden. Ms. Plowden has also obtained records showing that Mr. Glover paid taxes and had utilities in his name at 9307 Lewis. Ms. Plowden is currently attempting to obtain bills from the Kensington address, but that may not be feasible without a waiver from the tenant, who appears to be Mr. Pierceson.

Mr. Glover's presence at the home does not establish that he had any possessory interest or that he controlled access to the premises. No evidence, beyond his mere presence, has been established to support these conclusions.

**SUGGESTIONS SUPPORTING A BELOW GUIDELINE SENTENCE**

---

[1] Despite the CS's erroneous belief that Mr. Pierceson and Mr. Glover were brothers, they are not related.

In imposing any sentence, 18 U.S.C. § 3553 generally directs that the Court shall impose a sentence sufficient, but not greater than necessary. Among the factors for the Court to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford an adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. (See 18 U.S.C. § 3553(a)).

The advisory sentencing guidelines are an additional factor for the Court to consider but a district court may not begin with the presumption that those guidelines are reasonable. <u>United States v. Alvizo-Trujillo</u>, 521 F.3d 1015, 1018-1019 (8th Cir.2008)(<u>citing</u> <u>United States v. Gall</u>, 128 S.Ct. 586, 596-597 (2007) and <u>United States v. Rita</u>, 127 S.Ct. 2456 (2007)).

### **History and Characteristics of Mr. Glover**

As detailed in the Presentence Investigation Report (PSR), Mr. Glover is a 49 year-old man. Although he has a one serious conviction involving felony murder, he was 22 years-old at the time of that sentencing. In the lengthy time that Mr. Glover served on that case, he only incurred five institutional violations[2], none of a serious

---

[2] It would be extremely rare to for a person to serve a lengthy prison sentence in the Missouri Department of Corrections without incurring any violations. Violations can include minor acts such as remaining on a phone call too long, possessing commissary items that belong to other inmates, being outside of the cell at an unapproved time, etc.

12

nature. He was released on parole in 2012 with no incidents during his supervision.

Mr. Glover was placed on bond in this matter on November 1, 2019. He remained on bond until his plea on October 14, 2021. In the nearly two years that he remained on bond, Mr. Glover had violations for marijuana use and failing to report for drug testing on two occasions. No adverse action was ever taken.

During that time, he resided with his wife of 13 years, Yolanda Glover, and maintained employment, and, other than occasional marijuana use, demonstrated to the court that he can live a productive and law abiding life.

With an underlying case that involves no violent behavior, imposing such a lengthy sentence is clearly much greater than necessary. Mr. Glover does not downplay the fact that the distribution of narcotics causes damage within a community, and can lead to violence based on the nature dealing drugs, it is clear here Mr. Glover never acted with the intent to harm anyone.

**Seriousness of the Offense, Promote Respect for the Law, Deterrent**

For Mr. Glover, the punitive purpose of sentencing can be achieved with a below the guidelines sentence.

Excessively lengthy sentences of incarceration do not provide deterrence. There is "little empirical evidence that increases in the length of already long prison sentences yield general deterrent effects that are sufficiently large to justify their social and

economic costs." *United States v. Valdovinos*, 760 F.3d 322 (4th Cir. 2014) (citing Daniel S. Nagin, Deterrence in the Twenty-First Century, 42 Crime and Justice 199, 201(M. Tonry, ed. 2013)) (Davis, J., dissenting). Instead, deterrence is promoted by the "certainty of apprehension," rather than "the ensuing legal consequence." Nagin at 1 (abstract).

The details of the crime are outlined in the PSI. While Mr. Glover understands that drug distribution can have violent consequences, there are no allegations of violent behavior or threats in this case.

**Protect the Public**

While Mr. Glover was involved in a serious crime at age 22, his behavior in prison, since his release, and while on bond, demonstrate that the court that he has refrained from any acts of violence. Additionally, even with a below the guidelines sentence, Mr. Glover will be subject to a substantial period of post-imprisonment supervision by the court.

A review of Mr. Glover's case in light of the sentencing factors enumerated in 18 U.S.C. § 3553 demonstrates that a below guideline sentence is more than sufficient.

WHEREFORE, defendant respectfully requests this Court to impose a below guideline sentence.

Respectfully submitted,

 /s/ Carie Allen
Carie Allen
Assistant Federal Public Defender
1000 Walnut, Suite 600
Kansas City, MO 64106
(816) 471-8282

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

In accordance with Rule 49(a), (b) and (d), Fed. R. Crim. P., and Rule 5(b), Fed. R. Civ. P., it is hereby CERTIFIED that on February 24, 2021, the foregoing motion was electronically filed and delivered to Kenneth Borgnino, Asst. U.S. Attorney, 400 E. 9th, Kansas City, MO 64106.

 /s/ Carie Allen
Carie Allen